673 A.2d 348

**ERIE INSURANCE EXCHANGE, Appellant,**

v.

**Vernon R. CLAYPOOLE, Vernon R. Claypoole, Inc., Amanda Black, Heather Black, Leonard Black, Wilma Black, Leonard and Wilma Black as the Guardians of Amanda and Heather Black, Erin Davis, Gregory Davis, Gregory Davis as the Guardian of Erin Davis, Darcie Hulings, Stephanie Hulings, Dennis Hulings, Luene Hulings, Dennis and Luene Hulings as the Guardians of Darcie and Stephanie Hulings, Elizabeth Jones, Nancy R. Jones, Indiana Area School District, David Laird, Superintendent of the Indiana Area School District and Clark Lemuel Myers, Jr., Appellees. (Two Cases)**

Superior Court of Pennsylvania.

Argued Nov. 2, 1995.

Filed March 12, 1996.

144

Richard W. Dibella, Pittsburgh, for appellant.

George P. Faines, Pittsburgh, for Myers, appellee.

Richard B. Tucker, III, Pittsburgh, for Claypoole, appellee.

Before: ROWLEY, President Judge,* WIEAND, KELLY, POPOVICH, HUDOCK, FORD ELLIOTT, SAYLOR, HESTER, and OLSZEWSKI, JJ.

KELLY, Judge:

This appeal asks us to determine whether appellant, Erie Insurance Exchange ("Erie"), is legally obligated to defend and indemnify appellees, Vernon R. Claypoole ("Claypoole"), Vernon R. Claypoole, Incorporated ("Claypoole, Inc."), and Clark L. Myers ("Myers") in a civil action instituted against appellees by several minor children and their parents/guardians (the "plaintiffs"). In the civil action, the plaintiffs seek damages from appellees based upon their allegations that Myers, during the course of his employment for Claypoole, Inc. as a school bus driver, sexually molested the minor children on numerous occasions while driving them to and from school. We hold that the issue of Erie's legal obligation to defend and indemnify Claypoole and Claypoole, Inc. is dismissed as moot and we need not determine whether the trial court erred in ordering it to defend and indemnify them. We further hold that Erie possesses no duty to defend or indemnify Myers and the trial court committed an error of law by ordering it to defend him. Accordingly, we dismiss in part and reverse in part.

The relevant facts and procedural history of this case are as follows. Claypoole, Inc. owned several school buses which it leased to the Indiana Area School District ("IASD"), together with drivers, to transport students to and from school. Claypoole was the president of Claypoole, Inc. On June 28, 1990, the plaintiffs filed a complaint in the United States District Court for the Western District of Pennsylvania naming IASD,

---

* This decision was reached prior to the retirement of President Judge Rowley from this Court.

its superintendent, Myers, and Claypoole as defendants. An amended complaint was filed on February 5, 1991 naming Claypoole, Inc. as an additional defendant. Essentially, these complaints charged IASD, its superintendent, Claypoole, and Claypoole, Inc. with violating the plaintiffs' civil rights; charged Myers with assault and battery by "negligently, intentionally, and unlawfully engag[ing] in offensive and harmful physical conduct in the nature of sexual abuse and offensive touching of" the minor children; and charged Claypoole and Claypoole, Inc. with negligent hiring and entrustment resulting from Claypoole, Inc.'s employment of Myers as a school bus driver. According to the complaint, Myers' sexual molestation of the minor children occurred between September 1, 1984 and June 1, 1985 and between September 1, 1988 and December 16, 1988.

Erie became involved in the plaintiffs' civil action against appellees by virtue of the combination automobile insurance policy ("combination policy") it had entered into with Claypoole, Inc. for the period of August 30, 1984 through August 30, 1985 and the commercial automobile insurance policy ("commercial policy") it had entered into with Claypoole, Inc. for the period of August 30, 1988 through August 30, 1989. In the combination policy, Erie agreed to pay legally obligated damages "arising out of the ownership, maintenance, or use" of Claypoole, Inc.'s automobiles on behalf of Claypoole, Inc. and those persons, such as Myers, whom Claypoole, Inc. permitted to use its automobiles. The combination policy specifically excluded damages for injuries resulting from intentional acts of those insured. Similarly, in the commercial policy, Erie agreed to pay legally obligated damages caused by accidents arising "out of the ownership, maintenance, use, loading or unloading" of Claypoole, Inc.'s automobiles on behalf of Claypoole, Inc. and those persons, such as Myers, whom Claypoole, Inc. permitted to use its automobiles. The commercial policy defined the term accident as "any event or continuous or repeated exposure to the same conditions resulting in bodily injury ... that anyone we protect did not expect or intend to happen."

In light of the combination policy and the commercial policy, on August 31, 1990, Erie and Claypoole, Inc. executed the non-waiver agreement. This agreement acknowledged the lawsuit that the plaintiffs had initiated in the District Court pursuant to their allegations of Myers' sexual molestation of the minor children. It further acknowledged that Erie was willing to investigate the plaintiffs' allegation and provide an initial defense in this lawsuit without prejudicing its right under the combination and commercial policies. Thus, in the non-waiver agreement, it was mutually agreed that:

1. Erie or its attorneys may, without waiving any of its rights under the policies, investigate the alleged incidents or occurrences giving rise to the Lawsuit, provide a defense to Vernon R. Claypoole and/or Claypoole, Inc. in the Lawsuit, and perform any acts which may be considered desirable on behalf of Vernon R. Claypoole and/or Claypoole, Inc. in defending the Lawsuit; and such actions on the part of Erie shall not operate as an admission of liability under the policies or prejudice Erie's rights under the policies.

2. Erie does not hereby waive or release any rights under the policies.

3. Claypoole, Inc., does not hereby waive or release any rights it may have against Erie. The exception being that Claypoole, Inc. waives the right to claim that Erie has waived its rights under the policies by investigating the alleged incidents and occurrences or by providing a defense in the Lawsuit to Vernon R. Claypoole and/or Claypoole, Inc.

No similar agreement was executed between Erie and Myers.

Eventually, summary judgment was granted by the District Court as to each of the plaintiffs' civil rights claims and the Third Circuit affirmed. *See Black by Black v. Indiana Area School District,* 985 F.2d 707 (3rd Cir.1993). The plaintiffs remaining tort claims were then transferred to the Allegheny County Court of Common Pleas. After this transfer occurred, Erie filed a complaint in declaratory judgment on May 17, 1991. In this complaint, Erie requested the issuance of an order declaring that it had no legal obligation to defend or

indemnify Claypoole, Claypoole, Inc. or Myers in the plaintiffs' civil action based upon their remaining tort claims against the trio. With the consent of all parties, by order dated July 15, 1991, venue of this case was transferred to the Indiana County Court of Common Pleas.

Various pleadings were filed by all parties over the course of the next three years pertaining to the declaratory judgment complaint that had been filed by Erie. On July 26, 1994, the plaintiffs filed a motion for summary judgment against Erie as to all issues of insurance coverage. Claypoole and Claypoole, Inc. also filed a motion for summary judgment on July 26, 1994. In this motion, Claypoole and Claypoole, Inc. requested that the trial court order Erie to defend and indemnify them in the plaintiffs' civil action. Erie opposed these summary judgment motions and effectively requested that summary judgment be granted in its favor in a brief filed August 10, 1994. On August 19, 1994, the plaintiffs and Claypoole and Claypoole, Inc. filed reply briefs in support of their summary judgment motions. Myers subsequently moved for summary judgment on August 31, 1994, thereby joining the plaintiffs' summary judgment motion and brief replying to Erie's opposition to that motion.

By decree and amended decree dated September 1, 1994 and September 14, 1994, respectively, the trial court ordered Erie to defend and indemnify Claypoole and Claypoole, Inc. in plaintiffs' civil action pursuant to the combination and commercial policies. The trial court further ordered Erie to defend Myers pursuant to the combination and commercial policies, but found that the issue of Erie's duty to indemnify Myers pursuant to these policies was not yet ripe for judicial review. Thus, the trial court granted the motions for summary judgment filed by the plaintiffs, Claypoole, Claypoole, Inc. and Myers, thereby denying Erie's declaratory judgment complaint. Shortly after these decrees had been issued by the trial court, Erie settled all of the plaintiffs' remaining claims against Claypoole, Claypoole, Inc. and Myers.[1] On September

1. The trial court order approving this settlement was entered September 21, 1994.

30, 1994, Erie timely noticed its appeal of the trial court's decree and amended decree. Erie filed an amended notice of appeal on October 7, 1994.

Erie raises the following issues for our review:

I. WHETHER THE CONDUCT FOR WHICH THE MINOR CHILDREN SEEK COMPENSATION IS SEXUAL MOLESTATION BY CLARK LEMUEL MYERS, JR., WHICH CONSTITUTES INTENTIONAL CONDUCT FOR WHICH THE ERIE POLICIES AFFORD NO COVERAGE.

II. WHETHER THE INJURIES OR ACTS OF WHICH THE MINOR PLAINTIFFS COMPLAIN ARISE FROM THE OWNERSHIP, MAINTENANCE, USE, LOADING AND/OR UNLOADING OF A SCHOOL BUS SO THAT THE ERIE POLICIES AFFORD COVERAGE.

III. WHETHER COVERAGE IS AFFORDED UNDER AN AUTOMOBILE LIABILITY INSURANCE POLICY FOR A CAUSE OF ACTION FOR NEGLIGENT HIRING AND ENTRUSTMENT WHERE THE UNDERLYING TORTIOUS CONDUCT IS SEXUAL MOLESTATION.

IV. WHETHER IT WAS IMPROPER FOR THE COURT BELOW TO ENTER JUDGMENT IN FAVOR OF CLARK LEMUEL MYERS, JR., BEFORE ERIE HAD ANY OPPORTUNITY TO RESPOND TO THE MOTION FOR SUMMARY JUDGMENT FILED BY HIM.

V. WHETHER IT IS PROPER UNDER THE CIRCUMSTANCES OF THIS ACTION FOR ERIE TO CONTINUE TO SEEK AN ADJUDICATION OF ITS DUTY TO DEFEND AND INDEMNIFY EVEN THOUGH THE UNDERLYING ACTION HAS BEEN SETTLED.

Appellant's Brief at 4.

As Erie's fifth issue pertains to the propriety of this appeal, we will address it first. In this issue, Erie claims that this

entire appeal is properly before this Court even though it settled the plaintiffs' tort claims against Claypoole, Claypoole, Inc., and Myers shortly after the trial court issued the September 1, 1994 and September 14, 1994 decrees. Erie first contends that it never actually defended Myers in the plaintiffs' civil action, never agreed to defend him in this action, and the trial court erred in ordering it to do so. Consequently, Erie posits that its appeal from the trial court's decrees ordering it to defend Myers is not mooted by its settlement with the plaintiffs' because it will be required to reimburse Myers for his expenses incurred in defending himself in the plaintiffs' civil action unless we reverse these decrees. Contrarily, Myers claims that Erie's settlement with the plaintiffs moots this appeal. According to Myers, an actual controversy no longer exists because of the settlement.

Additionally, Erie contends that its settlement with the plaintiffs does not moot its appeal from the trial court's decrees ordering it to defend and indemnify Claypoole and Claypoole, Inc., despite the existence of the non-waiver agreement. Erie argues that we should address this issue because of the potential that other children may bring similar civil actions against Claypoole and Claypoole, Inc. based upon allegations of sexual molestation committed by Myers. Claypoole and Claypoole, Inc. take no position on this issue.

It is impermissible for courts to render purely advisory opinions. *State Farm Mut. Auto. Ins. Co. v. Veltri,* 424 Pa.Super. 612, 615, 623 A.2d 849, 850 (1993); *In re Application of Milton S. Hershey Med. Ctr.,* 407 Pa.Super. 565, 571, 595 A.2d 1290, 1293, *aff'd,* 535 Pa. 9, 634 A.2d 159 (1993); *Courtney v. Ryan Homes, Inc.,* 345 Pa.Super. 109, 119, 497 A.2d 938, 942 (1985). Generally, we will not review moot or abstract questions. *Rosenfield v. Pennsylvania Auto. Ins. Plan,* 431 Pa.Super. 383, 388, 636 A.2d 1138, 1141 (1994); *Commonwealth v. Sal–Mar Amusements, Inc.,* 428 Pa.Super. 321, 326, 630 A.2d 1269, 1272 (1993). In other words, judgments or decrees to which no effect can be given will not, in most cases, be entered by this Court. *Richards v. Trimbur,* 374 Pa.Super. 352, 359, 543 A.2d 116, 119 (1988), *allocatur*

*denied,* 522 Pa. 620, 563 A.2d 888 (1989); *Graziano Constr. Co., Inc. v. Lee,* 298 Pa.Super. 311, 317, 444 A.2d 1190, 1193 (1982) (quoting *O'Donnell v. Pennsylvania Liquor Control Bd.,* 158 Pa.Super. 533, 536, 45 A.2d 369, 370 (1946)). This means that, at every stage of the judicial process, an actual case or controversy must usually exist to avoid dismissal for mootness. *Commonwealth v. Sal–Mar Amusements, Inc., supra* at 326, 630 A.2d at 1272; *Richards v. Trimbur, supra* at 359, 543 A.2d at 119. Moreover, a change in the facts may render a case moot even though it had once been actual. *In re Gross,* 476 Pa. 203, 209, 382 A.2d 116, 119–20 (1978); *Richards v. Trimbur, supra* at 359, 543 A.2d at 119; *Commonwealth v. Smith,* 336 Pa.Super. 636, 640, 486 A.2d 445, 447–48 (1984).

Several exceptions to the general prohibition of appellate review of moot questions do, however, exist. Appeals presenting questions capable of repetition and apt to elude appellate review will be decided even if they are technically moot. *Jersey Shore Area Sch. Dist. v. Jersey Shore Educ. Ass'n,* 519 Pa. 398, 400, 548 A.2d 1202, 1204 (1988); *Commonwealth v. Sal–Mar Amusements, Inc., supra* at 326, 630 A.2d at 1269; *In re Application of Milton S. Hershey Med. Ctr., supra* at 572, 595 A.2d at 1294. Further, moot appeals will be reviewed where a party to the controversy will clearly continue to suffer detriment due to the decision of the trial court. *Commonwealth v. Sal–Mar Amusements, supra* at 326, 630 A.2d at 1272; *Commonwealth v. Smith, supra* at 641, 486 A.2d at 448; *Janet D. v. Carros,* 240 Pa.Super. 291, 311, 362 A.2d 1060, 1070 (1976), *allocatur denied.* Finally, in rare instances, moot appeals concerning questions of great public importance are reviewable. *Meyer v. Strouse,* 422 Pa. 136, 138, 221 A.2d 191, 192 (1966) (quoting *Ridley Park Shopping Center, Inc. v. Sun Ray Drug Co.,* 407 Pa. 230, 232, 180 A.2d 1, 3 (1962)); *Graziano Constr. Co., Inc. v. Lee, supra* at 316, 444 A.2d at 1193; *Janet D. v. Carros, supra* at 311–12, 362 A.2d at 1070.

Instantly, an actual case or controversy between Erie and Myers still exists despite Erie's settlement with the

plaintiffs. Erie never agreed to nor did it ever actually provide a defense to Myers throughout the plaintiffs' entire civil action. Thus, when the trial court ordered Erie to defend Myers in the plaintiffs' civil action against him pursuant to the combination and commercial policies, it effectively ordered Erie to reimburse Myers for the resources he expended in defending himself against the plaintiffs. Erie has continually contested its legal obligation to defend Myers and reimburse him in this regard. Therefore, our resolution of this appeal will determine whether Erie was properly ordered to reimburse Myers for these defense expenditures and this portion of appellant's appeal is not moot.

■ When Erie settled with the plaintiffs, however, an actual case or controversy no longer existed between it and Claypoole and Claypoole, Inc. Under the non-waiver agreement, Erie agreed to investigate the plaintiffs' allegations and initially defend Claypoole and Claypoole, Inc. in the plaintiffs' civil action against them without waiving its rights under the combination and commercial policies. Nothing of record indicates that Erie failed to abide by this agreement. Erie defended Claypoole and Claypoole, Inc. from August 31, 1991 up until it instituted the declaratory judgment action from which this appeal is ultimately derived. During the resolution of the declaratory judgment action, the plaintiffs' underlying civil action was, for all intents and purposes, stayed; neither Claypoole or Claypoole, Inc. expended any resources defending themselves in this underlying action during that period of time.[2] Thus, because Erie had defended Claypoole and Clay-

2. Of course, Claypoole and Claypoole, Inc. expended considerable resources defending themselves in Erie's declaratory judgment action. Thus, these expenditures were not incurred by Claypoole and Claypoole, Inc. in defense of the plaintiffs' underlying civil action against them. Therefore, for purposes of determining the propriety of this portion of the appeal, such expenditures are outside the scope of the coverage contemplated by the combination and commercial policies and are the sole responsibility of Claypoole and Claypoole, Inc. After all, "[t]he purpose of awarding declaratory relief is to finally settle and make certain the rights or legal status of the parties." *Geisinger Clinic v. DiCuccio*, 414 Pa.Super. 85, 104, 606 A.2d 509, 519 (1992), *allocatur denied*, 536 Pa. 625, 637 A.2d 285 (1993), *cert. denied*, — U.S. —, 115 S.Ct. 904, 130 L.Ed.2d 788 (1995) (citing *New London Oil Co., Inc.*

poole, Inc. against the plaintiffs in their civil action and then settled with the plaintiffs on behalf of Claypoole and Claypoole, Inc. shortly after the trial court resolved its declaratory judgment complaint, it is unnecessary for Erie to reimburse either Claypoole or Claypoole, Inc. to comply with the trial court's September 1, 1994 and September 14, 1994 decrees. Erie effectively acquiesced to these decrees with regard to Claypoole and Claypoole, Inc. by virtue of its execution of the non-waiver agreement and eventual settlement with the plaintiffs. Therefore, no effect could be given to our resolution of this issue if we were to render one and it is moot. *See generally Commonwealth v. Joint Bargaining Committee for the Pennsylvania Social Services Union*, 484 Pa. 175, 177, 398 A.2d 1001, 1002 (1979) (appeal to Supreme Court from Commonwealth Court's decree enjoining union from engaging in work stoppages became moot when new labor contract was signed prior to Supreme Court's resolution of appeal); *Brunn v. Kean*, 163 Pa.Super. 574, 575–76, 63 A.2d 108, 109 (1949) (where parties agree to disposition of litigation and acquiesce to trial court's order, dismissal of appeal is proper). *Cf. Terra Nova Ins. Co. Ltd. v. 900 Bar Inc.*, 887 F.2d 1213, 1219 (3rd Cir.1989) (insurer's federal declaratory judgment claim regarding its duty to defend insured will be rendered moot if insurer continues to defend insured in underlying civil action in state court until underlying action is resolved because insurer could not recover costs of continued representation of

*v. Ziegler*, 336 Pa.Super. 380, 383, 485 A.2d 1131, 1133 (1984)). Further, the Declaratory Judgment Act pertinently provides as follows:

Any person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise, and obtain a declaration of rights, status, or other legal relations thereunder.

42 Pa.C.S.A. § 7533. Accordingly, if the resources expended by Claypoole and Claypoole, Inc. in defending against Erie's declaratory judgment action were not segregated from their expenditures in defending against the plaintiffs' underlying civil action, the purpose behind declaratory relief and Erie's rights pursuant to 42 Pa.C.S.A. § 7533 would be defeated.

insured in underlying civil action even though such costs may subsequently be found unnecessary).

Further, none of the exceptions of the mootness doctrine apply to the facts of this case. This is not a rare instance in which Erie has raised an issue of great public importance. Moreover, because settlement with the plaintiffs occurred and Erie had originally defended Claypoole and Claypoole, Inc. in the plaintiffs civil action, no party continues to suffer detriment due to the trial court's order. Finally, the potential that other children who had been driven to school by Myers might bring a similar action against Erie does not present a question capable of repetition yet apt to elude our review. Although a similar case may arise in the future, if Erie appeals from a similar ruling of the trial court and does not settle the underlying case, this issue will not elude appellate review. Hence, if we were to resolve the portion of this appeal pertaining to Erie's duty to defend and indemnify Claypoole and Claypoole, Inc. under the combination and commercial policies, we would be rendering an advisory opinion pertaining to a moot issue. Accordingly, an appellate determination of whether claims of negligent hiring and entrustment against an insured in sexual molestation cases invokes an insurer's duty to defend and indemnify cannot be furnished at this time.

We now address the remaining issues raised by Erie which are properly before this Court. Erie contends that the trial court erred in entering summary judgment in favor of Myers and ordering it to defend him in the plaintiffs' civil action pursuant to the combination and commercial policies. According to Erie, it is not legally obligated to defend or indemnify Myers under these policies because the plaintiffs' complaint charged Myers with purely intentional torts pertaining to his alleged sexual molestation of the minor children. Conversely, Myers claims that the commercial and combination policies required Erie to defend him against the plaintiffs. Myers contends that the injuries alleged by the plaintiffs are causally connected to his use of Claypoole, Inc.'s school bus.

Further, Myers emphasizes that the plaintiffs' complaint filed in the District Court alleges that his conduct with regard to the minor children was negligent, intentional, and unlawful. Because of the way in which the plaintiffs' complaint is worded, Myers believes that the combination and commercial policies cover him in the plaintiffs' civil action.

Our standard of review from the grant of a summary judgment motion is well-established.

> ... [S]ummary judgment is properly granted where the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits demonstrate that no genuine, triable issue of fact exists and that the moving party is entitled to judgment as a matter of law. Pa.R.Civ.P. 1035(b); *Stidham v. Millvale Sportsmen's Club*, 421 Pa.Super. 548, 558, 618 A.2d 945, 950 (1992), *appeal denied*, 536 Pa. 630, 637 A.2d 290 (1993); *Harford Mutual Insurance Co. v. Moorhead*, 396 Pa.Super. 234, 237, 578 A.2d 492, 494 (1990), *appeal denied*, 527 Pa. 617, 590 A.2d 757 (1991). The trial court must examine the record in the light most favorable to the non-moving party and resolve all doubts against the moving party. *Stidham v. Millvale Sportsmen's Club, supra.* The moving party's evidence must clearly exclude any genuine issue of material fact. *Id.* We will reverse the trial court's grant of summary judgment only if there has been an error of law or a clear abuse of discretion. *Britamco Underwriters, Inc. v. Weiner*, 431 Pa.Super. 276, 279, 636 A.2d 649, 651 (1994); *McCain v. Pennbank*, 379 Pa.Super. 313, 318, 549 A.2d 1311, 1313 (1988) (citations omitted).

*Aetna Cas. and Sur. Co. v. Roe*, 437 Pa.Super. 414, 419–20, 650 A.2d 94, 97 (1994).

 An insurer's duty to defend and indemnify the insured may be resolved via declaratory judgment actions. *Harleysville Mut. Ins. Co. v. Madison*, 415 Pa.Super. 361, 365, 609 A.2d 564, 566–67 (1992). *See Aetna Cas. and Sur. Co. v. Roe, supra* at 420, 650 A.2d at 98 (Superior Court reviewed trial court's resolution of insurer's action seeking declaration of duty to defend and indemnify); *Uguccioni v. USF & G*, 408

Pa.Super. 511, 513, 597 A.2d 149, 150 (1991) (same). *See also Stidham v. Millvale Sportsmen's Club, supra* at 565, 618 A.2d at 954 ("... declaratory judgment action ... might have resolved at the outset the question of [the insurer's] duty to defend"). In such actions, the allegations raised in the underlying complaint alone fix the insurer's duty to defend. *Aetna Cas. and Sur. Co. v. Roe, supra* at 422, 650 A.2d at 98 (citing *Stidham v. Millvale Sportsmen's Club, supra* at 564, 618 A.2d at 953; *Germantown Ins. Co. v. Martin,* 407 Pa.Super. 326, 331, 595 A.2d 1172, 1174 (1991), *allocatur denied,* 531 Pa. 646, 612 A.2d 985 (1992); *Harford Mut. Ins. Co. v. Moorhead, supra* at 238–39, 578 A.2d at 494–95; *United Services Auto. Ass'n v. Elitzky,* 358 Pa.Super. 362, 368, 517 A.2d 982, 985 (1986), *allocatur denied,* 515 Pa. 600, 528 A.2d 957 (1987)). "It is well established that the duty to defend and pay the costs of defense is broader than the duty to indemnify." *J.H. France Refractories v. Allstate Ins. Co.,* 534 Pa. 29, 43–44, 626 A.2d 502, 510 (1993) (citing *Erie Ins. Exchange v. Transamerica Ins. Co.,* 516 Pa. 574, 583, 533 A.2d 1363, 1368 (1987)). *See Aetna Cas. and Sur. Co. v. Roe, supra* at 421, 650 A.2d at 98 (citing *Britamco Underwriters v. Weiner, supra* at 280, 636 A.2d at 651; *D'Auria v. Zurich Ins. Co.,* 352 Pa.Super. 231, 233, 507 A.2d 857, 859 (1986)). This duty to defend, however, is not activated by every allegation raised against the insured. *Id.* (citing *D'Auria v. Zurich Ins. Co., supra* at 234, 507 A.2d at 859). The nature of the allegations themselves, not the details surrounding the injuries suffered, are the basis upon which the insurer's duty to defend the insured arises. *Id.* at 422, 650 A.2d at 98 (quoting *D'Auria v. Zurich Ins. Co., supra* at 234, 507 A.2d at 859; *Springfield Tp. v. Indemnity Ins. Co. of North America,* 361 Pa. 461, 464, 64 A.2d 761, 762 (1949)). Thus, only allegations contained within the underlying complaint pertaining to injuries which are either actually or potentially within the scope of the insurance policy obligate the insurer to defend the insured. *Id.* at 422, 650 A.2d at 99 (citing *American States Ins. Co. v. Maryland Cas. Co.,* 427 Pa.Super. 170, 183, 628 A.2d 880, 887 (1993); *Stidham v. Millvale Sportsmen's Club, supra* at 564, 618 A.2d at 953).

Where liability insurance cases concerning the sexual molestation of children by an insured arise, this Court recently held that the inferred intent rule, as utilized in *Wiley v. State Farm Fire and Cas. Co.*, 995 F.2d 457 (3rd Cir.1993), shall be applied. *Aetna Cas. and Sur. Co. v. Roe, supra* at 429, 650 A.2d at 102.

> [I]n certain cases a court can infer an actor's intent as a matter of law from the nature and character of his or her acts.... [I]n child abuse cases ... the inferred intent to harm is an irrebuttable presumption. The criminalization of child abuse additionally serves to place the insured on notice of the societal understanding that the harm from such conduct is inseparable from its performance.... [H]arm to children in sexual molestation cases is inherent in the very act of sexual assault committed on a child, regardless of the motivation for or nature of such assault, and ... the resulting injuries are, as a matter of law, intentional....

*Id.* at 428–29, 650 A.2d at 102 (citations, quotations, and footnotes omitted). The characterization of the horrific injuries suffered by the children who are the victims of sexual molestation as resulting from negligence "would ... create a legal oxymoron as an extension of tort law...." *Id.* at 431, 650 A.2d at 103.

Instantly, the plaintiffs' complaint in the civil action underlying Erie's petition for declaratory relief charged Myers with sexual molestation of the minor children resulting from Myers' negligent, intentional, and unlawful conduct. But, pursuant to the inferred intent rule, injuries resulting from sexual assault committed on children in cases of sexual molestation are intentional as a matter of law. Hence, despite the wording of the plaintiffs' complaint, only allegations of injuries resulting from Myers' intentional conduct towards the minor children were raised by the plaintiffs. Both combination and commercial policies exclude insurance coverage for injuries resulting from intentional acts. Moreover, any sexual molestation of the minor children by Myers does not arise "out of the ownership, maintenance, use, loading or unloading" of Claypoole, Inc.'s automobiles as is required by these policies.

Simply stated, no causal connection exists between the operation of a school bus and the injuries suffered by its minor passengers who have been sexually molested by its driver. Thus, none of the allegations raised by the plaintiffs against Myers in their underlying complaint pertain to injuries which are actually or potentially within the scope of the combination and commercial policies. In other words, Erie never agreed to provide insurance coverage to Myers for the injuries alleged by the plaintiffs.

Because the injuries alleged by the plaintiffs are outside the scope of the combination and commercial policies, Myers is not entitled to judgment as a matter of law. Consequently, the trial court committed an error of law in entering summary judgment in favor of Myers. Under the circumstances, we conclude that Erie possesses no legal obligation to defend or indemnify[3] Myers; summary judgment in Erie's favor should have been entered and its petition for declaratory relief should have been granted. To hold otherwise would be the equivalent of characterizing the sexual molestation of children as a negligent act caused by being in the wrong place at the wrong time instead of characterizing it as an intentional act resulting from the repugnant conduct of the molester. We refuse to take such a benign view of sexual molestation. Therefore, we cannot require Erie to pay the costs of Myers' defense in the plaintiffs' underlying civil action.

Based upon the foregoing, we hold that Erie's appeal from the trial court's order requiring it to defend and indemnify Claypoole and Claypoole, Inc. is moot and Erie has no duty to defend or indemnify Myers. Accordingly, we dismiss this appeal in part, reverse in part, and remand in part for entry of summary judgment in favor of Erie.

Appeal dismissed in part; order reversed and case remanded in part. Jurisdiction relinquished.

---

**3.** Even though the trial court ruled that the issue of Erie's duty to indemnify Myers was not yet ripe for judicial review, we can resolve this issue because we hold that Erie has no duty to defend Myers. As the duty to defend is broader than the duty to indemnify, Erie could not be required to indemnify Myers without also being obligated to defend him.