630 A.2d 1269

COMMONWEALTH of Pennsylvania

v.

SAL–MAR AMUSEMENTS, INC., t/d/b/a Vanity, Gary N. Miller, Appellants.

Superior Court of Pennsylvania.

Submitted June 21, 1993.

Filed Sept. 1, 1993.

322

Ralph B. Pinskey, Harrisburg, for appellants.

Richard E. Guida, Harrisburg, Asst. Dist. Atty., for Com., appellee.

Before DEL SOLE, BECK and HESTER, JJ.

BECK, Judge:

This appeal challenges the trial court's finding that appellant/bar constituted a common nuisance. We affirm.

Vanity, a bar in the city of Harrisburg, is owned by appellant Sal–Mar Amusements, Inc.; Gary Miller is sole shareholder and president of the corporation. Beginning in the fall of 1989, Harrisburg police received numerous complaints from

residents in the area surrounding Vanity about heavy traffic, boisterous conduct, drinking, littering and drug use. Police responded by conducting physical and video surveillance of the premises and, eventually, using an undercover agent to make drug purchases inside the bar. On July 24, 1990, the district attorney filed an action in equity asking the court to find that Vanity constituted a common nuisance and requesting that the bar be closed for a period of one year pursuant to 47 Pa.S.A. § 6–611.[1]

In its Bill in Equity, the district attorney's office recounted the undercover activities of Pennsylvania State Police Enforcement Officer Mort Ivy, who made repeated purchases of drugs while inside the bar from persons who appeared to have some control over the premises. Officer Ivy stated that the drug transactions were made in the presence of bar employees. Also part of the Bill were sworn statements from residents of the neighborhood who described the disruptive activity that took place outside the bar between midnight and 4:00 A.M., including drinking on the street, playing loud music, double parking, fighting, drug use and littering. Based on the allegations set forth in the Bill, the trial court granted a Temporary Restraining Order that closed the business pending a full hearing.[2]

On September 18, 1990, the Honorable John C. Dowling scheduled a hearing on the merits for September 25, 1990. On the day of the hearing, appellant filed a motion for continuance and and a motion for recusal; both were denied and the proceedings were commenced. The proceedings were adjourned later that day and set to resume on October 1, 1990. On September 27, 1990, appellant filed a motion for discovery.

---

1. The statute provides that a bar or tavern may be closed for one year where the court finds that it constitutes a common nuisance.

2. Appellant filed a request for a restraining order before the Honorable Sylvia Rambo of the Middle District of Pennsylvania in an effort to prevent the Commonwealth from going forward. Appellant's request was denied and he then sought removal of the Commonwealth's action to federal court. Removal was rejected by Judge Rambo and the case was remanded to the Dauphin County Court of Common Pleas for disposition.

On October 1, 1990 appellant again requested a continuance, this time to allow additional time for discovery. The court denied the request. On October 3, 1990, at the conclusion of the hearing, the trial court found that Vanity constituted a common nuisance and ordered the sheriff to immediately close the bar for a period of one year. After post trial motions were denied, appellant filed this timely appeal.

We address first the Commonwealth's Motion to Quash. The Commonwealth argues that the matter is moot because the bar was closed and remained closed for one full year prior to our review. Because the year has expired, the Commonwealth reasons, appellant no longer has a stake in the outcome of this case.

It is well established that an appellate court will not decide moot or abstract questions; an actual controversy must exist at all stages of review. *In re Gross*, 476 Pa. 203, 209, 382 A.2d 116, 119 (1978). Technically, this matter is moot because over one year has passed between the trial court's closure order and our review. However, there are several exceptions to the mootness doctrine, two of which are applicable here.

First, this case presents a question capable of repetition yet escaping judicial review. *Commonwealth v. Smith*, 336 Pa.Super. 636, 486 A.2d 445, 448 (1984) (citing *Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975); *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973)). By virtue of the time it takes to preserve issues for appellate review, file an appeal, and submit briefs and a reproduced record to a panel of this court, an appeal of a closure order is not likely to, and in this case did not, reach this court prior to expiration of the one year injunction mandated by the statute. Second, it is clear that one of the parties to the controversy will continue to suffer some detriment from the lower court's decision. *Id.* Appellant/bar now has a record of closure based on the finding of a nuisance. The order by the trial court affects appellant's liquor license and its record with the Pennsylvania Liquor Control Board, as well as the bar owner's subsequent efforts

to apply for, extend, and/or maintain a new or existing liquor license.

This adverse effect of the trial court's order, and the fact that these types of cases typically escape appellate review, constitutes an exception to the mootness doctrine. *See Janet D. v. Carros,* 240 Pa.Super. 291, 362 A.2d 1060, 1070 (1976). For these reasons, we deny the Commonwealth's motion to quash and proceed to the merits of the case.

Appellant alleges nine errors on the part of the trial court; we will address each one. Appellant's first claim, that the Pennsylvania Rules of Civil Procedure apply to this hearing, appears to relate directly to his eighth claim of error which alleges a technical violation of Pa.R.Civ.P. 1517 and, in appellant's view, makes the trial court's order a nullity. Rule 1517 sets forth the manner in which a court in equity is to issue an adjudication. Appellant claims that the trial court did not comply with the Rule. The Commonwealth insists that the Rule was satisfied.

█ Regardless of whether the Rule was adhered to in the technical sense, appellant can be afforded no relief on these facts. The purpose of Rule 1517 is to assure that an adjudication provides an adequate basis for appellate review.[3] However, failure to conform to the Rule is not fatal where a party cannot articulate any prejudice suffered as a result of the failure. *Matter of Estate of Ross,* 316 Pa.Super. 36, 462 A.2d 780, 785 (1983). Appellant has not shown how he has been harmed by the court's alleged failure to satisfy the Rule. Therefore, even if we were to find that a technical error had been made by the trial court, we would not afford appellant any relief on this issue.

█ Appellant next finds fault with the trial court's refusal, on the day of the hearing, to grant a continuance. A trial court has broad discretion to grant or deny a request for a continuance; as an appellate court, we will not disturb such a

3. The Rule requires that the court make an adjudication that includes a statement of issues, a chronological statement, a discussion of the questions of law and a decree nisi. *See* Pa.R.Civ.P. 1517(a).

decision unless an abuse of discretion is apparent. *Walasavage v. Marinelli,* 334 Pa.Super. 396, 483 A.2d 509, 518 (1984). Appellant contends that the continuance was necessary because discovery was not complete. The trial court found that appellant's failure to file a motion for discovery for two full months after receipt of the Bill, coupled with the fact that the Bill itself set forth in detail the substance of the Commonwealth's case, militated against the grant of a continuance. The trial court noted in its opinion that despite appellant's claim of unpreparedness, counsel was fully prepared for cross-examination of Commonwealth witnesses and was able to call a number of witnesses in defense.

In response, appellant asserts general claims of unfairness regarding the trial court's "rushing this case to final hearing" and denying appellant "substantial rights;" however, appellant offers no proof of actual prejudice suffered as a result of the trial court's denial. We are persuaded by the trial court that denial of the request for a continuance was proper and caused no harm to appellant. We find no abuse of discretion on this issue.

 Appellant next claims that the trial judge erred in refusing to recuse himself because of an alleged appearance of impropriety. We note that the party moving for recusal has the burden of establishing bias, prejudice or unfairness. *Commonwealth v. Mickell,* 409 Pa.Super. 595, 598 A.2d 1003, 1006 (1991), *appeal denied,* 531 Pa. 638, 611 A.2d 711 (1992). Further, it is the duty of the trial judge to decide whether he or she can hear a case fairly and without prejudice; unless that decision constitutes an abuse of discretion, we will not disturb it. *Reilly by Reilly v. Southeastern Pennsylvania Transportation Authority,* 507 Pa. 204, 489 A.2d 1291, 1301 (1985).

 We find that the trial judge acted properly in denying the motion for recusal. The bases for appellant's motion are vague and unfounded. As discussed *infra,* the volume of evidence presented at trial supports fully the trial court's grant of the one year injunction. Our review of the record

leads us to conclude that the basis for the court's ruling was the evidence before it and nothing more.

Appellant's fourth, fifth and sixth claims have to do with the sufficiency of the evidence. First, appellant claims that the burden of proof for this type of case was not met by the Commonwealth. Second, appellant claims that the bar cannot be held responsible for the problems in the community because much of the offensive activity took place outside the bar, not on the premises. Third, appellant claims that because he was not personally aware of the drug transactions that occurred inside the bar, the court is precluded from finding that the bar should be closed.

In deciding whether a trial court has acted properly in closing a bar pursuant to § 6–611, we are to examine the record to determine if there were any "apparently reasonable grounds for the actions of the court below." *Commonwealth v. Graver*, 461 Pa. 131, 334 A.2d 667, 669 (1975) (citations omitted). We are mindful that a court may consider violations of the crimes code when deciding whether the closure of an establishment is proper. *Commonwealth ex rel Ness v. Keystone Sign Co., Inc.*, 355 Pa.Super. 562, 513 A.2d 1066, 1068–69 (1986). Further, an inquiry into the activities outside the bar is permissible so long as the conduct at issue is in the immediate vicinity of the bar and there is a causal relationship between what occurs inside and outside the premises. *Id. See also Graver*, 334 A.2d at 669.

The Commonwealth presented ample evidence supporting the closure of Vanity. Inside the bar, repeated sales of drugs were made to an undercover officer by persons with access to private areas of the bar and in view of bar employees. Police witnesses testified to numerous calls for assistance from the bar and in the area surrounding it. Police also conducted surveillance of the area and reported on the loud and disruptive behavior of persons congregating outside the bar. A videotape of the activity was shown to the court. Finally, several residents of the neighborhood testified that the conduct of the people in and around the bar was noisy,

disorderly, vulgar and rude. Traffic, litter, excessive alcohol use and drug activity were all found to be by-products of the bar's operation.

It was the Commonwealth's position, and that of many area residents, that the bar brought much of this undesirable behavior into the neighborhood.[4] We find that the testimony by the residents and police, coupled with the drug violations, was more than sufficient to support the injunction. *See Graver*, 334 A.2d at 670. The fact that Vanity operated in the past without these particular difficulties does not negate the existence of present harm to the neighborhood. *Id.* (deterioration of business changed law-abiding establishment into one that was offensive to sensibilities of the community). The Commonwealth established a "persistent and continuous disturbing of the peace and good order of the neighborhood"; therefore, the court properly found that a nuisance existed and acted within its power to enjoin its operation. *Ness*, 513 A.2d at 1068.

Appellant's seventh claim of error is that the trial court erred in admitting the testimony of the undercover officer because a proper foundation was not laid for his use of notes while testifying. Appellant insists that because the writing used was not an original writing by the officer made at the time of the event, the officer's testimony should be struck.[5]

■ Appellant confuses the two methods by which notes are utilized at trial. One method is past recollection recorded whereby a party, who offers a witness with no memory of an event, is permitted to admit into evidence a writing that memorializes the event. In the case of a past recollection recorded, it is the written document itself that is offered into evidence *in place of* the testimony of the witness, and the party offering the document is required to prove that the document/notes were made at or near the time of the event and while the witness had a clear and accurate memory of it.

---

4. The record reflects that neighborhood residents presented the police with a petition, signed by many neighbors, asking that Vanity be closed because it had become a common nuisance.

5. The notes used by the officer were typed by a secretary.

*See Commonwealth v. Cooley*, 484 Pa. 14, 398 A.2d 637, 641 (1979).

■ The other method is called present memory revived or refreshed recollection. In such a case a party offers a witness who generally remembers what occurred but must be aided in his recollection by reviewing notes, or anything else that serves to jog his memory. *See Commonwealth v. Canales*, 454 Pa. 422, 311 A.2d 572 (1973).

■ In this case, the undercover officer gave the majority of his testimony by his own memory, but needed to review his notes in order to recall the exact dates of various drug buys and the precise weights of the drugs he purchased. His use of notes for this purpose was proper and it was only his testimony, and not the substance of the notes, that was offered into evidence. *See B.D.B., Inc. v. Commonwealth of Pennsylvania Liquor Control Board*, 67 Pa.Cmwlth. 72, 445 A.2d 1360, 1362 (1982) (witness had sufficient independent recollection of essential facts and referred to notes only to refresh memory as to details). We find no error related to the officer's testimony.

Appellant's last allegation of error, that he was denied due process of law, is without merit. The record reflects that appellant was given a full and fair hearing on the merits of the injunction. Many witnesses were offered by both parties and the trial judge carefully considered the evidence and made his ruling in conformance with the law. We therefore affirm the order of the trial court.

Order affirmed.